Oral argument not to exceed 15 minutes per side. Ms. Anjali Biala, student, with Ms. Melissa Salinas, supervising attorney, for the appellant. Good morning, and may it please the court, I'm Melissa Salinas, I'm counsel of record for this case, and I have the pleasure of introducing third-year law student Anjali Biala from the University of Michigan Law School. Thank you. Good morning, and may it please the court, my name is Anjali Biala, and I represent the appellant, Mr. James Kennedy. May I reserve two minutes for rebuttal? Yes. Thank you. This appeal seeks to redress several critical sentencing errors that occurred during Mr. Kennedy's sentencing. They resulted in an unfair sentencing result of 36 months in prison, the statutory maximum, and an unreliable sentencing process. Mr. Kennedy's problems began when he sent a letter regarding objections he had to the pre-sentence investigation report to his trial lawyer. While Mr. Kennedy expected this letter to only be viewed by his trial lawyer, the defense counsel forwarded on the letter to the probation office. When the defense lawyer realized this egregious violation of attorney-client privilege, he withdrew the objections. However, he compounded this error when he failed to object himself to meritorious objections regarding the pre-sentence investigation. Is that letter in the record? Was it? Yes, the letter is in the record, Your Honor. And it was the defense counsel who withdrew the objections, as opposed to the defendant who withdrew the objections? Yes, Your Honor. Defense counsel withdrew the objections, and then he failed to submit his own objections. In the end, the district court sentenced Mr. Kennedy based on calculations which were completely unreliable. Let me explain. The pre-sentence investigation report in this case alleged that Mr. Kennedy was responsible for a $345,000 tax loss. However, there is no estimation method provided by the probation officer, nor any illuminating data provided that gives us reason to understand this $345,000 figure. This is a puzzle in this case as to how that number came up, and I was trying to figure this out. And I looked at the PSR paragraph 11, which comes up with the $345,000. And PSR paragraph 12 talks about 119 tax returns with an average amount of a refund of $35.86, and the legitimate refund being $7.10. So I subtracted the $7.10 from the $35.86 and got $28.76 of an improper amount per return, and then multiplied that by 119 returns, and I got $342,000, which is pretty close to $345,000. So the end question is, what's the harm? If there is, in fact, something that can be gleaned from the PSR as to roughly how $345,000 was arrived at, isn't this basically an approximation of the amount of loss that is acceptable in sentencing? It may be an approximation, Your Honor. However, because of this $3,000 discrepancy, there may have been room for other errors in the calculation of that $345,000 figure. And given the fact that the pre-sentence investigation report does not give us any information regarding how those averages were gotten, we don't know whether they were gotten from the universe of 119 tax returns or the universe of the 23 counts for which Mr. Kennedy was indicted for, we cannot be confident in the $345,000 figure while there is only a $3,000 margin of error. So normally, we would say that the defendant has a duty to object to the calculations that are in the PSR, or to object at the sentencing hearing and to say to the district judge, this number is wrong for the following reasons. And none of that happened because of the withdrawal of any objections that the defendant himself had thought of and the withdrawal by his counsel for the reasons that you've expressed. So, why shouldn't we say we need to have evidence from the lawyer as to why he didn't object? And look at this as an ineffective assistance of counsel claim down the line. I know that's one of your claims here, but we don't really know why the lawyer didn't object to the $345,000. In this case, Your Honor, based on the record, the lawyer has stated that he just sent in the objections, Mr. Kennedy's objections to the pre-sentence investigation report, without so much as reviewing them, and then he withdrew these objections. On the record, based on the fact that... Is that statement in the record somewhere? Yes, it is, Your Honor, and it is on page 837 of the sentencing transcript. Thank you. Now, a trial lawyer who is so negligent in sending in privileged communications without so much as looking at it would not turn around and engage in a sophisticated analysis of what the actual tax loss was and whether or not that pre-sentence investigation report's $345,000 figure was a conservative estimate. It is unrealistic that the trial lawyer did that in this case, which is why the actions of the trial lawyer or the inaction in this case of failing to object is clear on the record, and based on this court's holding in United States v. Williams, we can review this on direct appeal. What about the government's explanation for the tax loss calculation or absence of explanation? How does that factor into our consideration of this problem? With regards to the government's lack of information, I'd like to discuss the plain error doctrine and the district court's duty in ensuring the reliability of the pre-sentence investigation report. This is a case for which plain error doctrine was meant for. This is a case where everyone in the courtroom, the prosecutor, the trial lawyer, as well as the court, should have realized that there was an egregious error in this pre-sentence investigation report. However, the district court failed to inquire into this $345,000 figure. What's important and what's significant is that the district court, in fact, on the first day of trial, stated that Mr. Kennedy was entitled to understand the methodology behind these tax loss calculations. However, the district court abandoned this position when it failed to inquire into the arbitrary $345,000 figure. Now, plain error is to act as a safety net for situations, rare situations like this, where there is such an erroneous pre-sentence investigation report that is clear on the record. However, it concerns no one in the courtroom. Well, the error is the listing of the $345,000 without an explanation. Is that what the plain error is? Yes, Your Honor. So, hypothetically, a defendant and his counsel could agree that an amount stated in a PSR is a correct amount, right? I'm not saying your client and his counsel did, but hypothetically, a lawyer and client could decide not to challenge an amount because they know it's right or maybe it's even low. Yes, Your Honor. So why do we not think, at least at this point, that that's what's happening here and wait for an evidentiary hearing in a 2255 proceeding to inquire what really was going on factually here? Because based on this record, Mr. Kennedy has stated that his counsel completely abdicated his role in representing Mr. Kennedy. Mr. Kennedy also stated on the record during sentencing that he expected to speak with his counsel regarding these same objections, one of which has to do with the pre-sentence investigation report's $345,000 figure. However, counsel never strategized with Mr. Kennedy, never discussed anything with Mr. Kennedy. So your client said that in front of the district judge before the district judge sentenced your client? Yes, and that's on page 856 of the record. It is also in the letters that Mr. Kennedy attached to his sentencing memorandum regarding his counsel's complete ineffectiveness. Now, this sentencing memorandum, when was that given to the district judge? Was that before or after being sentenced? That was before being sentenced. Please proceed. The court further erred by taking the underlying conduct of the 119 tax returns and, as a matter of law, deciding that they constituted relevant conduct for the purposes of Mr. Kennedy's sentencing. The court had no information on the record regarding the remaining 96 returns of the 119 tax return universe for which Mr. Kennedy was alleged responsible for by the pre-sentence investigation report. While the government invites this court to analyze the relevant conduct analysis based on the common scheme or plan of the languages of the guidelines, I urge you to not accept that invitation. In the guidelines, it says that violations of the tax code, which constitute a common scheme or plan, should be aggregated together for the purposes of sentencing. However, in this case, we don't have any information on the record regarding the remaining 96 tax returns and whether or not they were illegitimate or not. So what would you say is the responsibility of the district judge, given the record that was in front of the district judge? I would say that the responsibility was to examine the pre-sentence investigation report and, based on its facially erroneous calculation that was arbitrary, to inquire into how the government or the probation office got this number. This court, in United States v. Lange, drew a line that separated cases such as this one from cases where the pre-sentence investigation report's facts have been undisputed and, therefore, the court's duty to fact-find is not triggered. In United States v. Lange, the court referred to another tax fraud case and stated that even though the defendant did not object properly because he made a bald assertion regarding the pre-sentence investigation report, it was incumbent on the trial court to make independent findings a fact. This is because, in that case, the facts needed to be decided were silent. The pre-sentence investigation report was silent on certain essential facts. In this case, similarly, the estimation method used and the underlying basis for that $345,000 figure is unknown. I see my time is about to expire. For the reasons stated above, we can have no confidence in Mr. Kennedy's sentence and we request that the court remand this case for resentencing. Thank you. Thank you. Thank you. May it please the court, my name is Katie Kreitzer and I represent the Appalee, the United States of America, on appeal. Your Honors, this appeal is about the proper role of the district court in sentencing a defendant. There are three issues currently before the court. First, the district court did not err in determining the tax loss involved in Mr. Kennedy's offense where the tax loss calculation was undisputed. Second, the district court did not err in denying Mr. Kennedy an acceptance of responsibility for deduction when he pled guilty on the third day of trial and thereafter denied both an intent to commit a crime and the illegality of his actions. Third, this court cannot hear Mr. Kennedy's ineffective assistance of counsel claims on direct appeal because the record does not show why Mr. Kennedy's counsel took the actions that he took. I'd like to start with the first issue. The court has had some trouble with understanding where the tax loss calculation actually came from and Mr. Kennedy's counsel suggested that the methodology that produced that tax loss calculation needed to be included in the pre-sentence report. And that's just not accurate. Where did the $345,000 come from? Your Honor, what I can tell you in the record is that Mr. Kennedy understood that tax loss calculation to come from a report that was done by Jason Ratliff, an IRS agent. And his objections, which you'll find in 320 of your record, identify those reports as being the place where that actual tax loss calculation came from. Additionally, if you look at the trial... Now you're referring to Kennedy's objections that were withdrawn. Correct, Your Honor. Correct. Also, if you take a look at the first day of trial, the trial record that we have here, in that record the United States represents to the court that it gave to Mr. Kennedy both Mr. Ratliff's report and all of the individual tax returns and documents that were used in creating that report. Now the report itself is not actually in the record here, but that's not unusual for a case like this, where Mr. Kennedy pled guilty after a couple of days of trial, but Mr. Ratliff didn't actually testify as to the damage in the tax loss calculations. Another thing that I wanted to correct in the record that we have here is that appellants suggested that Mr. Kennedy not expect his objections that are in the record at 320 to be sent to the probation officer. What the record actually shows is that Mr. Kennedy expected his counsel to review those objections and then send them to the probation officer. Presumably thinking through what are proper objections, what might be additional objections, what might be bad ideas to object to, and giving legal counsel to Mr. Kennedy. And that's acknowledged that that didn't happen, right? Yes, Your Honor. That goes to the ineffective assistance issue that we have here, the third issue. And what we know from the record is it appears that Mr. Kennedy's counsel did not review those objections before sending them to the probation officer. But what we do know is that after those objections were sent to the probation officer, Mr. Gordon, Mr. Kennedy's counsel, sat down with Mr. Kennedy and the probation officer, reviewed all of the voluminous objections that Mr. Kennedy had sent, and determined which ones were appropriate and which ones were not appropriate. At that point, Mr. Kennedy and his counsel withdrew the objections regarding the tax loss calculation. Did they withdraw all of the objections or just certain ones? All of the objections to the particular tax loss calculation. There were a few objections that remained on the record before the district court, but none of those objections expressly went to Mr. Kennedy's sentence. Those objections involved some issues regarding a refund anticipation loan, and those issues were not addressed by the district court and not considered in determining an appropriate sentence for Mr. Kennedy. So let me ask you, I'm sorry, go ahead. The court got to see all of the objected to material, even that which was withdrawn that was included in the pre-sentence report? Yes, Your Honor. Mr. Kennedy's objections at 320 were included in the record here, and the district court did see those objections that were written by Mr. Kennedy, even though they had been withdrawn. Are you referring at 320 to a page in the transcript? I see in the pre-sentence report these paragraphs that say Mr. Kennedy, and then a paragraph follows. Counsel says the whole letter is somewhere in the record, but the only thing I saw coming in today were these paragraphs that are in the record. So is the entire letter somewhere in the record? Your Honor, my understanding is that what you have there in front of you that starts on page 320 is this entire letter that counsel referred to. Page 320, and my thing is document 78, the sealed PSR? Yes, and if you take a look in the sealed PSR, Mr. Kennedy's objections are included as an addendum to the probation officer's responses to his objections. And my understanding from the record is that the memo that you see that was written in May of 2013 is the entire letter that we've been discussing here today, the objections that Mr. Kennedy wrote, that he sent to his counsel, and those objections that were later withdrawn after consultation with his counsel and the probation officer. Well, I'm simply not seeing it. I guess it starts at 319 is where the heading is, which says objections and corrections to the pre-sentence investigation report for James Raymond Kennedy. Is that the document you're referring to? That's correct, Your Honor. That's what we understand to be the full text of the letter and the objections that Mr. Kennedy made. So the basic question could come down to, given that there was some concern about how the $345,000 was arrived at, should the district judge have had a duty to inquire further before sentencing based on the $345,000? And if not, why not? Your Honor, under the law, the district court did not have a duty to drill down and to ask any further questions, specifically because those tax loss calculations were undisputed at the time they arrived to the district court. If you look at Federal Rule of Criminal Procedure 32, you'll see that the court could not seriously accept any undisputed portion of a pre-sentence report as a finding of fact. Shouldn't the antenna of the district judge have been raised because of the fact that Mr. Kennedy had made objections to this amount and because there was nothing showing how the $345,000 was arrived at in the PSR itself? Respectfully, Your Honor, the case law in this circuit is that the court may properly rely and find reliable undisputed calculations that are in a pre-sentence report. Quite frankly, on the record in sentencing, Mr. Kennedy's counsel spoke to the court about those objections and about the fact that he had withdrawn those objections and they weren't appropriately before the court, and that's the reason why they withdrew those objections. So the court did have a colloquy with Mr. Kennedy's counsel about those objections, and Mr. Kennedy's counsel confirmed that those objections were not appropriate and that they had been withdrawn by Mr. Kennedy. What about the other concern that your opponent raised about a certain number of the $119,000 tax returns that there was no information whatsoever regarding? I can't remember the number she said, but 80 of them or something like that. Your Honor, that's not abnormal here, and if we were to be able to sort of drill down here in a 2255 proceeding, I think what the court would find is that in Mr. Ratliff's report there's a discussion line by line of those $119,000 returns and what specifically he found to be appropriate and inappropriate in each of those returns. But what's on the record here before us, we know that Mr. Kennedy understood those calculations to be based on Mr. Ratliff's report. And they had a copy of the report? Yes, we know that. They had a copy of the report. We don't know the actual context of the report because the report's not before us here in the record, but we do know that both Mr. Kennedy and his counsel had a copy of that report. We know that Mr. Kennedy reviewed that report because he drafted these objections that you see before you in 319 and 320. So we know that that was there. We just don't know the actual content of that report. Your Honor, to go to the relevant conduct discussion that Appellant spoke with you about a little bit earlier, here, the relevant conduct is all tax law violations. What we know from the record is that over a period of four years, Mr. Kennedy filed 119 tax returns for 42 clients that all included falsified deductions, deductions that were improperly inflated. When we look at the relevant conduct standard, the court looks at the period of time during which these false tax reports were filed, and the court looks at the similar deductions that were used in each of these different tax reports. So if we look at this, we've got 119 reports that all used falsified deductions, and that's relevant conduct here. To go to the ineffective assistance of counsel claim that we've had some discussion about, I think that we've all recognized that the appropriate route here is to have a hearing under 2255 and to understand exactly why Mr. Kennedy's counsel took the actions that he took. As Judge Moore pointed out when speaking with appellant, it's unclear why Mr. Kennedy's counsel withdrew the objections to the tax loss calculation. It's unclear why Mr. Kennedy's counsel didn't review these objections initially and then subsequently withdrew these objections. I think that the appropriate role here is to send this back to the district court under 2255 and to allow the district court to ask Mr. Kennedy's counsel these questions. If the court has no further questions, the United States respectfully requests that the court affirm Mr. Kennedy's sentence and refuse to consider the ineffective assistance of counsel claims on direct appeal. Thank you. I would like to address three points. First, I'd like to speak about the universe of returns, the 119 returns that Mr. Kennedy was alleged responsible for. The district court in this case at the beginning of trial stated that yes, Mr. Kennedy received a report from Mr. Ratliff delineating between the disallowable and the allowable returns. However, while Mr. Kennedy received all the other tax returns that were seized from his office, which constituted 30 boxes of tax returns, given that he had done thousands of tax returns in his career, the district court acknowledged that this was a complex case whereby the defendant had access to the information. However, like I said earlier, the court acknowledged that the defendant was entitled to something regarding the methodology employed after acknowledging that the defendant had received all of the information for which the government based its $345,000 calculation on. Could you clarify for me? I'm sorry that I don't understand. The defendant received the report from Ratliff. Yes. But the report from Ratliff is not in our record? That is correct. Was it in the district court's record? I do not believe so, but we have not gotten a copy of the report as appellate counsel. Okay. So do we know then whether the trial counsel for the defendant has or had that report? I assume if the defendant had it, then it went through his counsel, but I don't. Without evidence in the record, I can't speak to that. However, we have not been provided that report. But what we do know is that that was the only report given to the defendant. The remaining 96 tax returns were not given in a complete methodological way to the defendant, and the district court even pointed this out. The district court pointed it out in the sentencing hearing. Is that where it was? The district court pointed it out during trial. During trial. Yes, and that, again, is on page 486 of the trial transcript. I see my time has expired. May I conclude briefly? With a couple of sentences is all. Sure. This case is about the reliability of the sentencing process for which we can have no confidence in and this court can have no confidence in. We request this court remand for resentencing with different trial counsel in order to assess Mr. Kennedy's sentence fairly. Thank you very much. Thank you very much. Ms. Biala, I understand that you are a third-year law student at the University of Michigan Law School, and I would like to congratulate you on your argument. You've done a wonderful job. The assistant U.S. attorney has done a great job as well. But it is a pleasure to see law students who do such a fabulous job, and your client has been well served, as has the United States. So we thank you both for your argument. The case will be submitted, and will the clerk call the next case, please?